# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN LATIK MOORE, | ) | |
| Plaintiff, | ) | Civil Action No. 12-177 Erie |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | |
| DENNIS CLAYTON ADAMS, et al, | ) | Magistrate Judge Baxter |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the motion to dismiss filed by Defendants [ECF No. 14] be granted. The Clerk of Courts should be directed to terminate the following Defendants as parties to this action: Sauers, Deer, Grassmeyer, Andrako, Nurse Bell, and Nurse Matt. Several claims and Defendants remain pending in this action.

### II.    REPORT

#### A.  Relevant Procedural History

Plaintiff, a state inmate acting *pro se*, filed this civil rights action under 42 U.S.C. § 1983. Plaintiff generally asserts claims for violations of his constitutional rights. Originally named as Defendants to this action were: Dennis Adams; Lt. Gill; Corrections Officers Rook, Thompson, Stoddard, Constanza, Zarichnak, Ochs, Speers, Dickey, Brian, Smith, Apodaca, McMahon, Duncan, Deer, Grassmeyer, Andrako, Barger, and Murin; Superintendent Debra Sauers; Health

1

Care Administrator Donald Skunda; Nurse Matt; Physicians' Assistant Sherbine; and Registered Nurse Bell.[1]

Defendants have filed a motion to dismiss. ECF No. 14. Despite being given the opportunity to do so, and despite being given notice that this motion to dismiss may be converted into a motion for summary judgment, Plaintiff has failed to file any opposition to the pending motion to dismiss. See ECF Nos. 16, 17, and 18. This matter is ripe for disposition by this Court.

### B. Standards of Review

#### 1. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

---

[1] Later, Plaintiff voluntarily withdrew his claims against Defendants Ochs, Speers, Dickey, Brian, Apodaca, McMahon, Duncan, Skunda, and Sherbine (see ECF Nos. 17, 18) and these Defendants were terminated as parties to this litigation.

Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of

3

specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 3. Motion for summary judgment pursuant to Rule 56[2]

Defendants have submitted evidence in support of the motion to dismiss. Therefore, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the

---

[2] By Order dated February 12, 2013, Plaintiff was notified, pursuant to the requirements of Renchenski v. Williams, 622 F.3d 315 (3d Cir. 2010), that this Court may convert the motion to dismiss into a motion for summary judgment. ECF No. 16.

4

pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

Under Rule 56, a party opposing a motion for summary judgment must cite to specific materials in the record that demonstrate the existence of a disputed issue of material fact. See Fed.R.Civ.P. 56(c)(1)(A). A material fact is a fact that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. at 249. "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).

The non-moving party must go beyond the pleadings and show specific facts by

5

affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).[3]

### C. Plaintiff's Allegations

In his Complaint, Plaintiff alleges that on July 31, 2010, Defendant Correctional Officer Rook struck him in the head and that shortly thereafter, Defendant Adams joined the fray beating Plaintiff to the ground and kicking him in the ribs and back. After being handcuffed (by Adams), Defendants Adams, Rook, and Thompson continued to beat and kick Plaintiff as he lay on the floor.

Following the beating, Plaintiff was taken to the Medical Department where Defendant Bell photographed Plaintiff's injuries but failed to provide any medical treatment. Plaintiff was

---

[3] When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson, 477 U.S. at 255. The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007). However, a court need not "turn a blind eye to the weight of the evidence." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

6

then escorted to the RHU and placed into a cell with Inmate Rueben Henry. Gill told Inmate Henry that Plaintiff was responsible for a previous stabbing incident in which Henry was injured. Henry told Gill that he would kill Plaintiff if Plaintiff were celled with him. In response, Gill told Henry to "kill the bastard, just make sure you wait a few days, so it won't come back on me." When Gill placed Plaintiff into the cell with Henry, Gill winked at Henry and made a hand gesture of slashing his hand across his throat. On August 4th, Plaintiff was attacked by Henry from behind with enough force to knock him unconscious. Henry then tied Plaintiff's hands and ankles together behind his back with a bed sheet.

Following the August 4th attack, Plaintiff was single-celled for a time, but on August 19th, Defendant Smith forced Plaintiff to take a cellmate despite being recently assaulted by his cellmate.

On October 20th, Defendant Murin filed a "false report on Plaintiff in justification of Defendant Murin taking Plaintiff's pain med. […] in doing so, Defendant Murin denied Plaintiff of prescribed medical treatment…" ECF No. 5, at ¶ 27.

On October 27th, Defendants Deer, Grassmeyer and Andrako denied Plaintiff his recreation period in retaliation for Plaintiff's filing of a lawsuit against them in Civil Action Number 10-265E.

While in RHU, Plaintiff repeatedly requested underclothes, bedding, and medical attention and was repeatedly denied these items by Defendants Stoddard, Zarichrak, Constanza.

As to Defendants Sauers, Plaintiff alleges that she was "deliberately indifferent to all of Plaintiff Moore's complaints by way of her non-action on responding to all of the grievances Plaintiff submitted on all of the events described in this complaint. Defendant Sauers [is] the Superintendent of SCI Forest and could have intervened at any time to put a stop to all of the

violations of Plaintiff's civil rights. Defendant Sauers went along with everything that was happening to the Plaintiff." ECF No. 5, ¶ 30.

The *pro se* complaint does not identify the legal theories upon which Plaintiff seeks to proceed, so this Court will liberally construe the factual allegations of the complaint and examine each possible legal theory under Twombly. In so doing, this Court gleans the following as the claims that Plaintiff is advancing:

- General claim against Superintendent Sauers based upon her supervisory authority over the facility and its employees;

- Retaliation claim against Deer, Grassmeyer, and Andrako;

- Excessive force claim against Adams, Rook, Thompson;

- Deliberate indifference claim against Nurse Bell from July 31st attack;

- Deliberate indifference claim against Nurse Matt from August 19th;

- Eighth Amendment claim against Gill for celling Plaintiff with Henry;

- Eighth Amendment claim against Smith for double celling Plaintiff following the assault by Henry;

- Due process claim against Murin based on a false misconduct;

- Verbal Harassment claim;

- Eighth Amendment claim against Stoddard, Zarichrak, and Constanza for the denial of general items while in RHU; and,

- Eighth Amendment claim against Stoddard, Zarichrak, and Constanza for the denial of medical attention items while in RHU.

**D. Supervisory Liability of Superintendent Sauers**

Plaintiff's claims against Defendant Sauers are clearly made against her in her capacity as Superintendent of the SCI Forest. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of

8

misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action).

The law is clear that there can be no liability against Defendant Sauers for her participation in the appeal process. The review and denial of grievances and subsequent appeals does not establish personal involvement sufficient to impose § 1983 liability on a supervisory official. See Riley v. DeCarlo, 2012 WL 4378569, at *3 (W.D. Pa. 2012); Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D. Pa. 2006). Accordingly, the motion to dismiss should be granted in this regard and Defendant Sauers should be terminated as a party to this action.

### E. Retaliation

Plaintiff has failed to state a retaliation claim against Defendants Deer, Grassmeyer and Andrako.

It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under § 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). See also Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech.").

In Rauser, the Third Circuit set forth with specificity the elements of a prisoner's cause of action for retaliation and the burden of proof he must carry to succeed on such a claim. 241 F.3d at 333. "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." Id. "Next, a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials." Id. Then, a plaintiff must prove "a causal link[4] between the exercise of his

---

[4] In order to establish the requisite causal connection," the plaintiff usually must prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with time to establish a causal link." DeFranco v. Wolfe, 387 Fed.Appx 147, 154 (3d Cir. 2010) citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3 259, 267 (3d Cir.2007). If the plaintiff does not show either of these, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation. Id. " 'It is important to emphasize,' however, 'that it is causation, not temporal proximity itself, that is an element of plaintiff's *prima facie* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.' " Washington-El v. DiGuglielmo, 419 Fed.Appx 275, 280 (3d Cir. 2011) quoting Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007). Even in the absence of temporal proximity, "a plaintiff can show 'that from the evidence gleaned from the record as a whole the trier of fact should infer causation.' " Id. quoting Lauren W., 480 F.3d at 267.

10

constitutional rights and the adverse action taken against him." Id. See also Whitehead v. Rozum, 2012 WL 4078422, at *4 (W.D. Pa.) citing Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (the third element characterized as "the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.").[5]

Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Here, Plaintiff has not alleged facts sufficient to support a *prima facie* case of retaliation. In order to satisfy the adverse action prong, the prisoner must plead facts "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al–Hafeez, F.Supp.2d 520, 535 (E.D.Pa.2002) quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Plaintiff's allegations that these Defendants denied him a single recreation period on October 27th (**before** Civil Action No. 10-265E was filed on November 3rd) are not sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Additionally, because the filing of the civil action post-dates the alleged retaliatory act, the filing of the lawsuit cannot serve as the causal connection necessary for the *prima facie* case.

Accordingly, the motion to dismiss should be granted as to this claim and these Defendants should be dismissed from this action.

---

[5] After a plaintiff has met his initial burden to show the three elements of the *prima facie* case, the burden then shifts to the defendant to "prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Rauser, 241 F.3d at 333.

### F. Verbal Harassment

To the extent Plaintiff is attempting to state a constitutional claim against Defendants Murin and Gill based upon insults and verbal harassment, it is well-settled that the use of words, no matter how violent, is not actionable under § 1983. See Wright v. O'Hara, 2004 WL 1793018, at *7 (E.D. Pa.) ("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit") (citations omitted); MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995) ("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); Murray v. Woodburn, 809 F.Supp. 383, 384 (E. D.Pa.1993) ("Mean harassment ... is insufficient to state a constitutional deprivation") (listing cases). See also Burkholder v. Newton, 116 F.App'x 358, 360 (3d Cir. 2004); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999).

Plaintiff has failed to state an actionable claim in this regard and the motion to dismiss should be granted as to this claim.

### G. Denial of Medical Treatment

Plaintiff alleges that Nurse Bell was deliberately indifferent to his medical needs following the use of physical force by prison guards on July 31st and makes a similar accusation against Nurse Matt on August 19th. See ECF No. 5, ¶¶ 5, 13. The allegations against Nurse Bell are limited to July 31st and the allegations against Nurse Matt are limited to the August 19th incident. Defendants move to dismiss both of these claims based upon Plaintiff's failure to exhaust his administrative remedies in accord with the PLRA.

#### 1) The Exhaustion Requirement of the Prison Litigation Reform Act

Defendants move for summary judgment based on Plaintiff's failure to comply with the

exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides that:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[6] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[7]

---

[6] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[7] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

---

even where the relief sought-monetary damages-cannot be granted by the administrative process.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3. Analysis of Exhaustion

In support of the motion to dismiss for failure to exhaust, Defendants have submitted evidence to this Court and therefor, this portion of the motion to dismiss will be analyzed under the motion for summary judgment standard.

*Claim against Defendant Bell stemming from July 31st*

Defendants have provided evidence that Plaintiff filed Grievance No. 331895 regarding the denial of medical treatment following the July 31st assault. ECF No. 15-1. Plaintiff complains about the denial of medical treatment by Nurse John Doe and Nurse Matt. Id. at page 10. In Plaintiff's appeal to the Superintendent, Plaintiff identifies John Doe as "Nurse Brown." Id. at page 8.

The Grievance Procedure Manual provides that "the inmate must include a statement of the facts relevant to the claim. […] The inmate shall identify individuals directly involved in the

15

event(s)." DC-ADM 804, Section 1, A., 11. See also Spruill, 372 F.3d at 234-35 (finding that prison officials can excuse an inmate's failure to identify a responsible individual by "identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance.").

It is clear from the record that Plaintiff has failed to exhaust this claim against Nurse Bell in accordance with the DC-ADM 804 and the PRLA and therefore the claim should be dismissed.

*Claim against Defendant Nurse Matt stemming from August 19th*

Defendants have produced evidence that Plaintiff did not file any grievance with regard to the denial of medical treatment on or around August 19th. See ECF No. 15-1, pages 15-19. Plaintiff has not provided any evidence to the contrary as he must in order to defeat a well-supported motion for summary judgment. See Celotex, 477 U.S. 317. This claim should be dismissed.

Because Defendants have provided evidence in support of their motion for summary judgment based upon the failure to exhaust and because Plaintiff has not provided any evidence to the contrary, the motion for summary judgment should be granted as to the claims for lack of medical treatment on July 31st and August 19th. Defendants Bell and Nurse Matt should be dismissed from this action.

**H. False Misconduct**

Initially, the filing of a misconduct, even if later proven to be false, "is not a constitutional violation so long as the inmate is provided with due process." Flanagan v. Shiveley, 783 F.Supp. 922, 931 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992) (citations omitted). See also Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), cert. denied, 485 U.S. 982 (1988). In this case, it appears from Plaintiff's allegations that he was properly notified of the charges associated with the misconduct and was afforded a hearing. Thus, Plaintiff was provided with all the process to which he was entitled. As a result, Plaintiff's claim against Defendant Murin is not cognizable under the Fourteenth Amendment and should be dismissed.

As to Plaintiffs complaints regarding any time he has spent in disciplinary custody as a result of the allegedly false misconduct, the Supreme Court has held that a prisoner's state created liberty interest is limited to those situations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Supreme Court considered the question of whether segregated confinement implicated a constitutional liberty interest and concluded that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. See also Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (placement of a prisoner in administrative custody for a period of 15 months did not impose atypical and significant hardship on prisoner and, thus, did not deprive due process rights). Thus, the fact that Plaintiff has been found guilty of an allegedly false misconduct and sanctioned to minimal terms of disciplinary custody does not implicate a violation of a constitutionally recognized liberty interest under the Fourteenth Amendment.

Accordingly, Plaintiff's due process claim should be dismissed.

### I. The Remaining Claims

This Court has gleaned several claims from the *pro se* pleadings that have not been addressed by Defendants in their motion to dismiss. Plaintiff alleges:

- An excessive use of force claim against Defendants Rook, Adams and Thompson based upon the July 31st assault;

- Eighth Amendment claim against Defendant Murin based upon the wrongful confiscation of Plaintiff's medication;

- Eighth Amendment claim against Defendants Stoddard, Zarichrak, and Constanza based on the denial of underclothes and bedding while in RHU;

- Eighth Amendment claim against Defendants Stoddard, Zarichrak, and Constanza based on the denial of medical attention while in RHU;

- Eighth Amendment claim against Defendant Gill for deliberately celling Plaintiff with inmate Henry which resulted in physical attack; and

- Eighth Amendment claim against Defendant Smith for deliberately double celling Plaintiff after the attack by Henry.

These claims remain pending against these named Defendants.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the motion to dismiss filed by Defendants [ECF No. 14] be granted. The Clerk of Courts should be directed to terminate the following Defendants as parties to this action: Sauers, Deer, Grassmeyer, Andrako, Nurse Bell, and Nurse Matt. Several claims and Defendants remain pending in this action.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 8, 2013